I understand that Council for the Government is on Zoom. Ms. Carter, can you hear us? Yes, I can hear you. Thank you. Hold on one second, there's members of the audience who are leaving. Mr. Miller, hold on one second. Good morning, Mr. Miller. Good morning, Your Honor, and may it please the Court. Luke Millar for the petitioner, Julio Antonio Peralta Taveras. As a lawful permanent resident since 1984, Mr. Peralta Taveras was entitled to leave this country, attend his mother's funeral, and return 12 days later without seeking a new admission into this country, unless it could be established by clear and convincing evidence that he had committed a qualifying offense prior to his return in 2016. Because the Department of Homeland Security has failed to ever establish that Mr. Peralta had committed a qualifying offense, the seeking admissions classification made in this case was an error, and the ensuing removal proceedings and ultimately the removal order were all predicated on this error. Accordingly, this Court should reverse and vacate the removal order. So what's the principle, that there needs to be clear and convincing evidence upon his return that he committed the offense, right? It's our understanding of LAW that this Court has found that there's a timing element, that the clear and convincing evidence So I don't know, I mean, the Supreme Court might overturn LAW, but we have LAW in the meantime. So, but LAW stands for the proposition that there needs to be clear and convincing evidence at the time of his return, right? Yes. Well, the BIA here says that the evidence at the time of his return was clear and convincing. There was a rap sheet that said he committed an offense, and then he gave a sworn statement that said, yes, I committed the offense, and I pleaded guilty, and I'm on probation. Yes. That seems pretty clear that that establishes that he committed the offense, right? So why is that not clear and convincing evidence? Well, first, we would point that the rap sheet in this case, as the IJ found it to be a rap sheet and called it inherently unreliable, was also manifestly incorrect in this case. It indicated to the CBP officer. It's manifestly incorrect. It indicated to the CBP officer that Mr. Peralta had a conviction upon a plea of guilty for a controlled substance offense in New York State. However, he was not finally convicted under the IJ. He wasn't finally convicted, right? So, I mean, if LAU stands for the proposition that we should focus on the evidence that was available at the time of reentry, the fact that later on it was dismissed isn't even relevant to determining whether he had committed an offense, right? I would disagree. I would say that — Why would you deny that at the time of reentry there — I mean, I don't know if it matters that there's a conviction. Like we said, in order to determine whether he's an applicant for admission, there just needs to be evidence that he committed the offense, not necessarily that there's a conviction. But it still is true that at the time of reentry there was a conviction, right? No, it is not true. Why is it not true? Well, first, I would say a rap sheet is never reliable evidence of a conviction. And secondly, the CBP officer's computer printout indicated to the officer himself that sentence was still pending. Yeah, the rap sheet says there's a conviction and the sentence is pending. So then they ask him about it, and he says, yeah, I committed the offense. I was arrested on the advice of an attorney. I pleaded guilty, and I was sentenced to probation. So the rap sheet could have been updated, but then they confirmed it with him in a sworn statement that the sentence had been imposed, right? Sure. So taking those in turn, if the sentence was still pending under this Court's jurisprudence and the INA's definition of a conviction, there had been no formal adjudication of guilt. But why does it matter what the INA's definition of a conviction is? So there's two questions, right? Sure. Whether he should be treated as an applicant for admission and then whether the agency establishes that he's inadmissible, right? Those are two different questions. And we said in Centurion and other cases that the first question doesn't turn on whether there was a conviction, but just whether there was evidence that he committed an offense, right? And then in order to establish that he's inadmissible, you need one of the grounds in 1182 that maybe he was convicted or there's reason to believe he's a drug trafficker or whatever. But for purposes of whether he's properly treated as an applicant for admission, they just need evidence that he committed an offense. Sure. So even if, you know, the rap sheet doesn't establish conclusively that he's convicted, it's pretty clear evidence that he committed the offense. And they confirm with him, and he admits it in a sworn statement, right? Sure. So first, you know, as the Supreme Court found in Vartelis and this Court in Centurion and in Lau, absent a record of conviction, it's going to be hard to meet the clear and convincing evidence standard. And we would submit a rap sheet with incorrect information. Even assuming there wasn't a conviction yet, why wasn't his admission to having committed the crime clear and convincing evidence that he indeed committed the offense? Sure. There's two reasons the statements of the CBP officer do not substantiate the burden here. First, it's not a validly obtained admission. The BIA has a longstanding precedent regarding how admissions to drug use and other inadmissibility determinations are made, and the CBP officer did not. Well, putting aside whether it was validly obtained, his words, if you just look at his words, were they not enough to show by clear and convincing evidence that he committed the offense? No, Your Honor. For a number of reasons. First, he's relating the facts as he understands them in theory before the Nassau County Court. And Nassau County Court reviewed those facts and dismissed the charge outright. That is a superior piece of evidence here regarding his criminal culpability. If I look at the transcript, it's S.A. 87. He says he was arrested for possession of the drugs. I was parked in a car. I was talking to a woman. The police came. They took me out of the car. They found drugs. Was the car yours? Yes. What type of drugs?  Did you intend on selling the cocaine? Yes, to sell and use it myself. Was the cocaine yours? Yes. Why isn't that clear and convincing evidence that he committed the offense? Because, first, the CBP officer did not comply with long-standing precedent regarding how to obtain a valid admission. And the BIA has said that when a noncitizen makes... So that's an argument that the confession should be suppressed in essence? It's an argument that Mr. Peralta's statement should not be used for immigration purposes. As the BIA found the matter of Kaye and repeatedly applied since then, when an immigration officer suspects potential drug use or a noncitizen begins to make statements relating to drug use, they have a very simple procedural requirement that they're supposed to comply with here. And they did not do that, likely because the CBP officer believes he had a final conviction. The CBP officer... I mean, the BIA addresses matter of Kaye in its opinion in this case, and it says matter of Kaye was about whether someone is deportable or inadmissible. It's not about the predicate question of whether he should be treated as an applicant for admission. And as you acknowledged, we've distinguished between those two questions. So the BIA itself says that that doesn't apply to this question. Yes, but in the same paragraph, paradoxically, the BIA quotes matter of Kaye and notes that matter of Kaye is not tied to a specific statutory requirement, but instead promulgated to give a noncitizen fair play. And importantly... Right, so if it's about giving fair play, you know, the circumstances of matter of Kaye is when you're deciding that somebody is removable for the country based entirely on their admission. But in this case, the sworn statement says, yes, I was in a legal proceeding before a court, and I had advice of counsel, and I pleaded guilty. Right? So the idea that he's confessing to something other than what would be satisfactory to a court, like that concern is not apparent where, from the face of the statement, we understand that he had a legal adjudication and he had a lawyer advising him, and the lawyer advised him to plead guilty to the charge. Sure. Notably, the lawyer was not present at JFK in 2016. Additionally, there are practical reasons why matter of Kaye should be complied with here. As the Ninth Circuit has found twice, when a noncitizen is returning from a trip abroad and makes statements relating to drug use, it's important that the interviewing officer provide the noncitizen with understandable definition and the elements of the crime so the reviewing court, the IJ, the BIA, and this court, can make an assessment of what crime was committed to or admitted to. Is it right that the BIA more recently has applied the principles of matter of Kaye to classification determinations? Yes, and unpublished decisions that we cite on page 35. What are we to make of that? At the very least, Your Honor, it's clear evidence of a standard of practice here that the BIA has arbitrarily deviated from in this case. Repeatedly, the BIA has applied matter of Kaye to situations just like Mr. Carlson's. You know, if you came here citing our unpublished decisions to us and saying that that binds the panel, we would say, what are you talking about? That's not the way we operate, right? Of course. But your argument is about sort of arbitrary decision-making. Yes, it's an abuse of discretion at the least, and they've arbitrarily But in those cases, even when they invoke matter of Kaye, isn't it normally in circumstances when you're relying entirely on the admission as opposed to some kind of evidence that there was a judicial proceeding, right? The BIA rather So the principle of matter of Kaye is like if you're relying entirely I hear the answer to that question. The BIA confirms or affirms the seeking admission to classification based purely on Mr. Peralta's statements. They do not base it on the proceedings before Nassau County Court Well, they base it on both things, right? The existence of the rap sheet and the statement, and the statement is not simply him saying I committed the offense. The statement is also saying not only did I commit the offense because I was caught with cocaine to sell and for personal use, but also that I was arrested and pleaded guilty on advice of a lawyer, right? So it's that it's not just that he admitted to committing the offense, but also that he had all of these procedural it was part of a process by which it was determined that he committed the offense. Of course, those facts are in the background of the BIA's decision, but the BIA rests solely on Mr. Peralta's statements and admission to a controlled substance offense or reported admission to a controlled substance offense. The BIA says it's the criminal record as well as the admission, which confirms the record in addition to being an admission of the circumstances. They do reference the rap sheet, but I think the BIA realized, as the government did below and the IJ, that there was no conviction here and so that they really only had Mr. Peralta's statements. And the BIA... You're talking about how to interpret the language of the opinion. So let's just put that aside for a second. So if I believe that the BIA is relying on the rap sheet in conjunction with the sworn statement, why is that not clear and convincing evidence? I have a record that he was convicted by a court of the offense and then somebody asks him, did you commit this offense? And he says, yes, I was arrested, I had cocaine, more than for personal use, I intended to sell it, and I pleaded guilty to the offense on the advice of a lawyer and I was sentenced to probation. So those things together, why is that not clear and convincing evidence that he committed the offense? First, the rap sheet, Your Honor, the IJ calls it unreliable in 2018. The government seems to acknowledge that it is unreliable and they do not challenge that below. So to the extent that the BIA is resting on the CBP officer's computer printout or the rap sheet, we would find that that's... Yeah, but again, you're just sort of adverting to what people said. So why don't I... I mean, the BIA seems to think it's relevant at least to whether he should be treated as an applicant for admission. So just like apart from what people said or what other actors said, why isn't it the case that if I'm trying to decide whether it is clear and convincing evidence that somebody committed an offense as opposed to being convicted for it, a rap sheet plus the admission, why wouldn't that be clear and convincing evidence? A rap sheet itself is not clear and convincing evidence of a conviction, especially when Nassau County Court reviewed the proceedings and dismissed the charge outright. Dismissed it and deemed it a nullity. Yeah, but again, you were just telling me a moment ago that under lab, we have to focus on the evidence that was there at the moment of reentry. So maybe it's true that the vacatur of the conviction might cause problems for ultimately proving it admissibility, but in terms of whether he should be treated as an applicant for admission at the moment of entry, the evidence established that he had committed an offense, right? I disagree, and I would also quibble strongly with the word vacatur. You know, this wasn't a situation where Mr. Polta had been convicted and then there was post-conviction relief or post-conviction vacatur. While the charge was pending before the trial court, it was dismissed outright. So there was no conviction. There never was a conviction. What do you mean there never was a conviction? Well, before Nassau County Court, the charge was pending, and then in February 2016, the county court dismisses the charge. And so his counsel said during the removal proceedings, Responder received LPR status on March 10, 1984. On April 9, 2014, Responder was convicted of criminal sale of a controlled substance in violation of New York Penal Law 220.3. This conviction was subsequently overturned on February 25, 2016, and Responder was restored to the status occupied before the arrest. So you're saying that that was wrong? Yes, Your Honor. So he lied during the sworn statement, and his counsel lied to the immigration court in saying that there had been a conviction? It was a misunderstanding in terms of the counsel, Your Honor, and reviewing this court's decision in Puello and reviewing the language. But how could it be that he was – so it's also not true that he was on probation? It's not clear from the record, Your Honor. If he was never convicted, how could he have been put on probation? It's not clear from the record, Your Honor, and I think that any – But in terms of whether he was ever convicted, are you saying it's not clear or you're saying he wasn't? Because a moment ago you said he wasn't. He was never convicted. That is very clear. But you're saying it's possible that he wasn't convicted, but nevertheless was sentenced to probation? No, Your Honor. I mean, the rap sheet that the CBP officer relies on, it clearly indicates the sentence was pending. And so he was never sentenced. And then a month later, the charge was dismissed. Mr. Peralta does make statements about being – But, I mean, you were just saying the rap sheet is unreliable, and now you're telling me the rap sheet is conclusive evidence that the sentence was never imposed, despite the fact that he said it was in a sworn statement and that his lawyer told the immigration court that it was. So if it's unreliable for one purpose, how could it be so conclusive that it doesn't even matter what he said and what his lawyer said? Sure. So it's either unreliable in terms of establishing a conviction. Regardless, it does say the sentence was still pending. That being said, even if you don't look at the rap sheet at all, a month later, Nassau County Court, while referring to the charges as pending, dismissed the charge outright. This isn't a situation where he had been convicted and they came back in after or there was some sort of direct appeal. The charge was still pending before the trial court, and they dismissed it and deemed it illegitimate. Okay, so then, again, there are two questions, right? There's whether there was clear and convincing evidence upon reentry that he should be treated as an applicant for admission, right? And you're saying that depends on the evidence the agency had at the moment of reentry. Then there's the question of whether at the ultimate hearing he's shown to be inadmissible, and that depends on the evidence presented at the hearing, right? And that can be subsequent to the moment of reentry, right? Yes, I understand you correctly. Okay, fine. So then the way that the two steps work out is that the moment of reentry, the evidence was the rap sheet plus the sworn statement. At the time of the hearing, as to whether he was established to be inadmissible, there was the dismissal of the conviction, but whatever other evidence they had gathered subsequent to that, right? So that's about whether there's reason to believe that he was a drug trafficker and all of that. That's a separate question as to whether they ultimately prove inadmissibility. But on the question of whether he's properly treated as an applicant for admission, that's just whether the evidence at the moment of reentry established that he had committed an offense, right? I mean, wouldn't any reasonable person looking at a rap sheet that says he was convicted and then he swears under oath that he committed the offense and pleaded guilty on the advice of a lawyer, wouldn't any reasonable person think that that showed that he had committed an offense? I don't think a reasonable adjudicator would look at a rap sheet as clear and convincing evidence of a conviction. You keep the two things in conjunction, right? The rap sheet plus the sworn statement. Yes, and the sworn statement, there's two reasons why this Court should not find that the sworn statement alone substantiates the Department's burden in this case. First, the CBO officer doesn't comply with Matter of K and the valid admissions and requirements therein. And then secondly, and very, very importantly, Nassau County Court reviewed these facts that Mr. Peralta is purportedly admitting to. Let me ask you, Mr. Miller, given that answer, why would you resist, and I think you're resisting, holding this matter in abeyance subject to what the Supreme Court does in law? Well, primarily, Your Honor, I represent Mr. Peralta and he's detained. I understand that. So he's detained? He is detained and he's mandatorily detained as a result of this seeking admission. So what would you like? Sometimes at the podium, you've got to make a decision. Would you like clarification from the Supreme Court that might help your client or would you like the current state of affairs? Of course I would love clarification from the Supreme Court that helps my client and other clients. So if that's your answer, then why should we hold it in abeyance? Because this case can absolutely be resolved without allow. Tell me why. Okay, sure. So if the department was obligated to meet their burden at the port of entry, as Lau seems to indicate, they failed. Whether or not they were supposed to, under the balance of the Felix and the pre-Lau scheme, if they were supposed to substantiate their burden in 2018 when they finally got in front of an IJ, they failed then as well. And so there is, and additionally, Lau does not address the central issue at this case, which is that Mr. Peralta's statement. There is no analysis of the admissions requirement. All right, so we'll hear from the government. So just to acknowledge that even accepting Lau, the agency was allowed to rely on the evidence it had at the time of reentry, which is the rap sheet plus the sworn statement. You're just saying that that does not establish that he committed the offense. Correct, yes. That's your position. Okay. So we'll hear from the government. Thank you. And then you reserve two minutes for questions. Ms. Carter, can you hear us? Yes, I can. Great. Please proceed. Thank you. Good morning, Your Honor, and may it please the Court, Margo Carter, the United States Attorney General. The Court should deny in part and dismiss in part this petition for review. The petitioner was properly treated as seeking admission at the border based on his 2014 conviction. There was clear and convincing evidence at that snapshot in time of petitioner's inadmissibility of the fact that he should be treated as seeking admission because the petitioner had a rap sheet that DHS was in possession of as well as his own statements at the border indicating that he had this conviction for criminal sale of a controlled substance. Indeed, that was not just clear and convincing evidence, but there was nothing to refute that clear and convincing evidence. To the extent that that could have been refuted, petitioner, in his sworn statement, actually confirmed the existence of the conviction. Moreover, DHS was not required to produce conclusive evidence of the conviction. Clear and convincing is the standard. And given the existence of the rap sheet as well as the petitioner's sworn statement, there was a basis for treating the petitioner as seeking admission upon his arrival at the airport. Does it matter that we ultimately have a judgment from the Nassau County Court that dismisses the conviction? I'm sorry, did you just say, is it relevant that they dismiss it? What's the relevance of the ultimate dismissal by the Nassau County Court? It's not relevant, because if we're looking at that snapshot in time, as of the person's entry into the United States, at that snapshot in time here, the petitioner was convicted. That's all the evidence that there was that said, convicted upon a plea of guilty, semicolon, sentence pending. So this goes back to my question to your colleague, Mr. Villar, about the Supreme Court's grant of cert in Laos and this idea that the snapshot is the only thing that the BIA can consider and that we can consider in assessing the argument. That framework may or may not change. Would you agree? I agree. I mean, that was why we moved to hold this case in abeyance, pending the Supreme Court's decision to sort of conserve judicial resources in this case. And so, well, we're trying to conserve our resources in one sense. And is there some decision, by the way, I guess if the Supreme Court, for example, just affirmed, you would say you prevail. But if there's a different framework, then you might not prevail. Is that fair? I think you prevail either way. And we sort of alluded to this in our brief that even under the matter of Valenzuela-Felix standard, our view is that we would still prevail because he, in order to determine that he was seeking admission at the border or at the airport, all that needed to be shown was that he admitted the essential elements of the offense. So even under the matter of Valenzuela-Felix standard, we think that we would prevail regardless of whether or not the conviction was later vacated. But here the BIA thought, maybe rightly, that it was stuck with the snapshot. Right. So there could be an argument, depending on what the Supreme Court says or does, that you can look under certain circumstances retrospectively to see what happened after the snapshot in assessing whether, in fact, the person was admissible. Is that fair? That is fair, Your Honor, yes. But your position is not that you got more evidence that he had committed the offense in 2014 subsequent to his arrival and reentry at JFK, right? Regardless, the evidence that you're saying establishes that he was properly treated as an applicant for admission was the rap sheet plus the sworn statement. Correct. Was there any subsequent evidence that further establishes that he should be treated as an applicant for admission? So there was evidence to indicate, I mean, he had further convictions in 2019. The further convictions happened after he reentered, so maybe that goes to whether he's inadmissible ultimately, but it doesn't go to whether he should have been treated as an applicant for admission upon reentry, right? That is correct. Okay, so it sounds like both parties agree that everything turns on whether the rap sheet plus the sworn statement is clear and convincing evidence that he committed an offense prior to reentry, right? I think, well, you say both parties. I think he's contesting the rap sheet, but okay. Both parties seem to agree that we look at a snapshot of what it was in 2014. Well, whether you're required to look only at the snapshot or not, both parties agree that this case turns on whether the rap sheet plus the sworn statement amount to clear and convincing evidence that he had committed a drug offense prior to reentry. That is our view, yes. Okay, so we just heard that the BIA violated Matter of K in the sworn statement, and therefore it can't be relied upon. What about that? So we address Matter of K in our brief on pages 40 to 42, but Matter of K is critically distinguishable from the case here, because in Matter of K, well, in this case, petitioner's questioning was voluntary. He was on notice that the questioning pertained to his seeking admission, and, of course, in Matter of K, that was not a seeking admission case. We're here just looking at this threshold question of whether or not the petitioner was properly treated as seeking admission. And in Matter of K, the ultimate determination was whether or not the individual was removable, and statements were relied upon in that case where— Well, Matter of K was about whether he was excludable, right, which maybe is about— The predecessor to, yeah. But it still wasn't about whether he should be treated as an applicant for admission. Correct. Correct. And Mr. Miller told us that the BIA in unpublished decisions has applied it in that context. What about that? I mean, I think we are stuck with the published decision here, and the unpublished decisions of an administrative agency are not a basis for this court to make a decision. I think that those may be helpful and instructive, but we would reject the notion that there's some sort of policy put in place by those unpublished decisions, as petitioner suggested. If it's about whether it makes sense to apply it in this context, is it right that Matter of K is about whether there's fairness to the alien if you're relying on the admission? And here, the admission is not just standing alone, but acknowledging that there was a legal process and advice of counsel. Does that make a difference? I think here, the admission itself was the admission that took place in the petitioner's— the criminal proceedings, like the admission to the actual elements of the offense was the one— Right. So you're saying that the sworn statement corroborates the plea of guilty in a legal proceeding. Correct. It's not that the agency is relying on the admission standing alone as the only evidence that he committed the offense. Right. It's almost like— So Mr. Miller, and I think that this is not an unreasonable reading, but you let me know what you think, says that the BIA actually, very technically when you read it, relies on the admission and uses the conviction, the actual whatever evidence of the conviction might exist as corroborating the admission. But it says, therefore, because of the admission, is that your reading or is that a mistaken reading? So we see the petitioner's admission in the sworn statement as both admitting to the offense itself and to the essential elements of it, but he's also admitting that he made a guilty plea to the offense that is mentioned in the rap sheet. Okay. Well, I guess what you're saying is he admitted to committing the offense. To the extent we're worried about some of the fairness protections that matter of case stands for, the fact that he's admitting not only to the offense but that he pleaded guilty on advice of counsel and was subject to a legal proceeding serves the function of, you know, the fairness protections. Correct. There was no entrapment in the way that there was in matter of case. I think matter of case had more of that sort of gotcha kind of process. So there are all these guardrails here that didn't exist necessarily in matter of case. Correct. Okay. Correct. And then Mr. Miller also said that he never was convicted, even though he said that he was, and his lawyer represented to the immigration court, that he was. Is that a question? I mean, you know, there is this jurisdictional bar that we can only review questions of law. Is that like a fact that we can't question? Like what is the status of that dispute as to whether there ever was a conviction? I think the fact of the conviction is well established by the record, and I think that. . . How about an expunged conviction? In other words, there's a mistake. A conviction shows up on a rap sheet, and I'm familiar with rap sheets, or in some other document, and then it's immediately or soon thereafter expunged. Well, I think it was not expunged at the time that he appeared seeking admission.  But what I'm asking about is what is the government's position when immediately after that, it becomes very clear that there was no conviction. So, I mean, I think that it's not clear that there was no conviction for immigration purposes. It's not clear why the conviction was deemed a nullity and dismissed. And our view is that the conviction can still be relied upon for immigration purposes. Right, because even for admissibility, the BIA has said, and we've said, that if the conviction is vacated for reasons unrelated to whether the offense happened, it could still count. Correct. More so in the context of whether there's clear and convincing evidence that he committed an offense in the first place. Correct. The reason for vacating the conviction would matter. I think we've got your argument, Mr. Miller. Thank you very much. Thank you, Your Honor. First, turning to the BIA's decision in this case, at the bottom of page 9 of the administrative record, it reads, the respondent was therefore correctly classified as a returning lawful permanent resident seeking admission based on his admitted commission of the essential element of an offense rendering him inadmissible. There is no acknowledgment or reference to the rap sheet or supposed conviction. The BIA rests solely on his – Wait, I don't know about – oh, page 9. Yeah, that's page 9. The respondent's criminal record at the time he sought admission in 2016 reflected that in 2014, the respondent had been arrested for and plead guilty to criminal sale of a controlled substance in the third degree in violation of section 220.391 of the New York Penal Law and sentence was pending. Further, as the immigration judge observed in a sworn statement before CBP, the respondent admitted that police found cocaine in his vehicle and so on. The respondent was therefore correctly classified. So the BIA expressly – I mean, the first thing it says is the criminal record, and then it says, in addition, there's the sworn statement. So it's reliant on both. Sure. I would just point that it's based on his admitted commission of the essential element. That being said, turning more broadly to matter of K here, it's not just unpublished BIA decisions. The USCIS policy manual instructs immigration officers that when a noncitizen begins to make admissions or statements relating to drug use, they are supposed to and are instructed to – Where is that? Is the USCIS policy manual, or where is that referenced in our – Where's the reference in the manual? It's in our opening brief here on here. Okay. Page 28 of our brief, similar to the agency interpretation directly refuted by the USCIS policy manual, in a chapter there titled Inadmissibility Determinations, the manual informs immigration officers that an acknowledgment of drug use may open a line questioning the determined criminal inadmissibility. But again, if we're talking about determining criminal inadmissibility, that's different from determining whether he should be treated as an applicant for admission. I disagree, because the determination of seeking admission is made by cross-referencing to 1182. Yeah, but we said in the Centurion case that these things are different, because whether you're treated as an applicant for admission depends on whether there's evidence you committed the offense. And we say that's different than the ultimate question on inadmissibility as to whether you were convicted of an offense or there's reason to believe you're a drug trafficker and whatever. So you don't need evidence of a conviction. You just need evidence that somebody committed an offense, right? So, like, it is a different question. It is a different question, but as this Court has – But even if the policy manual were binding, the policy manual at its base applies to the second question and not the first question. I would just, again, repeat that, you know, as the Supreme Court found in Bartelos and this Court in Centurion and Lau, absent a record of conviction it's going to be very, very hard to make this seeking admission classification, and they do not have a conviction here. And again, USCI's policy manual, of course, is not binding on this Court, but it is clear evidence that there is a standard practice here that the agency deviated from for reasons that do not make sense. They say it's an old case tied to a different statutory scheme that no longer exists, except they've applied it repeatedly to cases just like Mr. Peralta's. Thank you. Thank you very much. But it sort of stands for the proposition, right? Like, Matter of K itself says this principle is not really based on anything in the statute. It's about fair play toward the alien and reliability and so on, right? So it is sort of about best practice when you want to make sure that the admission really establishes an admissibility, right? It's a procedural protection that was not followed here, yes. All right. Thank you. Thank you very much. We'll reserve the decision.